**Below is a Memorandum Decision of the Court.**

_Mary Jo Heston_
**Mary Jo Heston**
**U.S. Bankruptcy Judge**
(Dated as of Entered on Docket date above)

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re:<br><br>INGRIM FAMILY LLC,<br><br>      Debtor. | Case No. 15-43036 |
| KATHRYN A. ELLIS, Trustee of the Estate of Ingrim Family LLC,<br><br>      Plaintiff,<br><br>  v.<br><br>LEE and JANE DOE INGRIM, husband and wife and the marital community composed thereof,<br><br>      Defendants. | Adversary No. 16-04052<br><br>MEMORANDUM DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON REMAINING CAUSES OF ACTION |

   This matter came before the Court for hearing on August 16, 2018, on Plaintiff's Motion for Summary Judgment for Avoidance and Recovery of Fraudulent Transfer and Post-petition Transfer ("Motion"), filed by Kathryn Ellis, Trustee ("Trustee") of the Estate of Ingrim Family LLC ("Debtor"). The Court previously entered an Order on Motion for Summary Judgment for Avoidance and Recovery of Preferential Transfers on August 8, 2017 ("2017 Order"). The

2017 Order grants the Trustee summary judgment on its cause of action for avoidance of preferential transfers in the amount of $7,000, which was subsequently enumerated as First Cause of Action in the Plaintiff's First Amended Complaint for Avoidance and Recovery of Preferential and Fraudulent Transfers Pursuant to 11 U.S.C. §§ 547(b)[1], 548, 549, 550 and 551 ("Amended Complaint").  The 2017 Order is currently on appeal to the Bankruptcy Appellate Panel for the Ninth Circuit (BAP).[2]  The Amended Complaint also asserts a Second Cause of Action to avoid a fraudulent transfer of $8,500 under § 548 and a Third Cause of Action to avoid the transfer/disposition of a point of sale device and neon sign under § 549. The Second and Third Causes of Action are the subject of the Trustee's Motion and addressed in this Memorandum Decision.

At the August 16, 2018 hearing, the Court determined that the Trustee established it was entitled to summary judgment on the unopposed claim made pursuant to § 549(a) to avoid the postpetition transfer/disposition of the point of sale device with the undisputed value of $5,000.  Regarding the Trustee's unopposed claim to avoid the postpetition transfer/disposition of a neon sign made pursuant to § 549(a), the Court determined that the Trustee established the elements of the claim, but granted Lee and Jane Doe Ingrim ("Defendants") additional time to file objective evidence of the sign's value to overcome the Debtor's scheduled value and 341 meeting testimony of the Debtor's principal that the sign was worth $7,000.  The Trustee was granted time to respond.  Regarding the Trustee's undisputed claim to avoid the transfer of $8,500 pursuant to § 548(a)(1), the Court determined

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] Oral argument of this appeal is scheduled before the BAP on October 25, 2018.  BAP No. WW-17-1241-TaBKu.

that the Trustee established the elements of this claim except insolvency. The Court granted the Trustee additional time to provide such evidence, with time for the Defendants to respond. The Court incorporates by reference its oral ruling made at the August 16, 2018 hearing, pursuant to Fed. R. Bank. P. 7052.

The Trustee timely filed an additional memorandum and evidence addressing insolvency under § 548(a), to which the Defendants did not respond. The Defendants timely filed additional information regarding the change in the sign's value from its earlier represented value, to which the Trustee responded. Based on the evidence, arguments of counsel, and pleadings submitted, the Court makes the following findings of fact and conclusions of law.

A. <u>Fragile financial condition under § 548(a)(1)(B)(ii)</u>

In the Trustee's Motion and at the August 16, 2018 hearing, the Trustee argued that the Debtor was insolvent at the time it transferred $8,500 to the Defendants, or became insolvent as a result of the transfer, pursuant to § 548(a)(1)(B)(ii)(I). In the Supplemental Memorandum Re: Insolvency in Support of Motion for Summary Judgment, the Trustee relies on § 548(a)(1)(B)(ii)(III) to establish the last element for its claim under § 548(a)(1)(B). This section requires a plaintiff to establish that the debtor "intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured." "[C]ourts have held that the intent requirement can be inferred where the facts and circumstances surrounding the transaction show that the debtor could not have reasonably believed that it would be able to pay its debts as they matured." <u>WRT Creditors Liquidation Trust v. WRT Bankr. Litig. Master File Defs. (In re WRT Energy Corp.)</u>, 282 B.R. 343, 415 (Bankr. W.D. La. 2001).

As with the other elements of this claim, the Defendants have presented no evidence pertaining to the insolvency element opposing summary judgment. Even when the nonmoving party fails to oppose, however, the burden remains with the moving party to prove that it is entitled to the relief requested. Borough v. Rogstad (In re Rogstad), 126 F.3d 1224, 1227 (9th Cir.1997).

The Trustee has presented sufficient evidence that the Debtor could not have reasonably believed that it would be able to pay its debts as they matured when the Debtor transferred $8,500 to the Defendants. The transfer at issue occurred on February 28, 2014. According to the Debtor's federal tax return for 2013 (Form 1065 U.S. Return of Partnership Income), the Debtor had an ordinary business loss of $3,085 in 2013. Ellis Decl. Ex. 1, ECF No. 120. Less than three months prior to the transfer, on November 1, 2013, the Debtor took out a business loan of $25,000 with Security State Bank. Id. Ex. 2. As part of that agreement, Security State Bank was granted a security interest in "All Inventory and Equipment" of the Debtor. Ellis Decl. Ex. 6, ECF No. 25. On February 7, 2014, the Debtor accessed the line of credit up the maximum amount available. Ellis Decl. Ex. 4, ECF No. 120. According to the check register for the Debtor's account at Anchor Bank, the Debtor's account was overdrawn as of February 25, 2014, three days prior to the transfer. The Debtor's account was again overdrawn on March 7, 21, April 12, 15-18, May 22-23, July 11, and 17, 2014, until another loan was taken out by the Debtor in the amount of $35,000 on July 24, 2014. Id. Ex. 5.

Furthermore, at the time of the transfer, the Debtor was delinquent in its payments to the Washington State Liquor and Cannabis Board. According to audit findings by the Washington State Liquor and Cannabis Board, the Debtor misreported for the 2nd Quarter 2012 through 1st Quarter 2014, resulting in total fees and penalties of $22,569.61 due through

the end of that quarter.  Dotson Decl. 2:6-8, ECF No. 121.  At the time of the transfer, the Debtor also had an outstanding lease obligation through May 31, 2017, requiring a rental payment of $5,000 per month.  See Ellis Decl. Ex. 5 at 27 ¶ 2.1, ECF No. 25.  The Debtor was unable to afford its lease obligation at least as of July 2014 and stopped making payments to the Washington State Liquor and Cannabis Board in August 2014, with the last payment made on August 6, 2014.  Ellis Decl. Ex. 6 at 9, ECF No. 120; Dotson Decl. 4-5, ECF No. 121.

Based on the admissible evidence before the Court, at the time of the transfer, all of the Debtor's assets were encumbered by a loan with Security State Bank and the Debtor was operating at a net loss.  Additionally, the Debtor was delinquent on its taxes to the Washington State Liquor and Cannabis Board, consistently overdrawn on its bank account, and struggling to make a payment of $5,000 per month on a lease with an outstanding obligation of at least $180,000.  The Trustee has presented sufficient evidence to establish that as of the time of the $8,500 transfer to the Defendants, the Debtor could not have reasonably believed that it would be able to pay its debts as they matured.  The Trustee is entitled to summary judgment avoiding the $8,500 transfer pursuant to § 548(a)(1)(B).

B.  Neon sign's value

Section 549(a) provides that a trustee "may avoid a transfer of property of the estate-- (1) that occurs after the commencement of the case; and . . . (2)(B) that is not authorized under this title or by the court."  It is undisputed that the sign was listed on the Debtor's Schedule B as property of the estate.  It is also undisputed that Defendant Lee Ingrim admitted in his deposition taken December 13, 2017, that he disposed of the sign postpetition. See Ellis Decl. Ex. 4 at 33, ECF No. 112.  Based on these undisputed facts, the Court

determined at the August 16, 2018 hearing that the Trustee is entitled to summary judgment avoiding the transfer of the neon sign pursuant to § 549.

Section 550 provides that the Trustee may therefore "recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property" from the Defendants. The Defendants admit that they disposed of the sign postpetition without court authority. As the Trustee cannot recover the sign itself, the Trustee is entitled to a monetary judgment for the value of the sign. See USAA Fed. Savs. Bank v. Thacker (In re Taylor), 599 F.3d 880, 890 (9th Cir. 2010) (purpose of § 550(a) is to restore the estate to the position it would have occupied had the property not been transferred).

When the value of property is recovered, as opposed to the property itself, the term "value" refers to fair market value. Joseph v. Madray (In re Brun), 360 B.R. 669, 674 (Bankr. C.D. Cal. 2007). At the August 16, 2018 hearing, the Court gave the Defendants additional time to present objective evidence of the sign's value, including pictures, invoices, and depreciation schedules. In response, the Defendants submitted the unsigned declaration of Duane Taylor, alleging that the sign was a custom sign, rendering it of "no value, except as scrap, to anyone else." Taylor Decl. 1:20-22, ECF No. 123. Defendant Lee Ingrim also submitted a supplemental declaration now alleging that he, rather than the Debtor, originally purchased the sign, and attaching an invoice for a "sign deposit" of $4,000. The sign, however, remains listed on the Debtor's Schedule A/B as property of the estate, both in the original schedules and unsigned amended schedules, which also attach a letter from Mr. Taylor opining that the sign has no value except for scrap metal.

The evidence presented by the Defendants is insufficient to create an issue of material fact as to the value of the sign. A court can only consider admissible evidence in ruling on a

motion for summary judgment.  Fed. R. Civ. P. 56(c); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988).  The declaration of Mr. Taylor at ECF No. 123 is unsigned and therefore cannot be considered.  Regarding Mr. Taylor's prior declaration at ECF No. 116, this also does not provide evidence from which a fair market value can be determined.  His two-sentence declaration merely states that he inspected the sign and that it had no value except for scrap metal.  Mr. Taylor's declaration does not provide his qualifications to value the sign, the date of the inspection, or any sign specifications like size, color, or material, or even what would constitute "scrap metal."  In short, even taking all inferences in the nonmoving party's favor, this declaration does not raise an issue of material fact as to the sign's value.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

The same is true of the invoice attached to Lee Ingrim's declaration.  Taking all inferences in the Defendants' favor, such invoice merely establishes that a sign was purchased from a certain vendor in March 2011 and that a deposit of $4,000 was paid. No admissible evidence has been presented as to the total amount paid, nor was the purchased sign described or identified.

The Defendants have failed to provide the Court with any admissible evidence from which it can determine the "fair market value" of the sign.  The only evidence before the Court from which the value of the sign can be ascertained for purposes of § 550 are the Debtor's schedules and the transcript of Defendant Jana Ingrim's testimony at the 341 meeting of creditors.  According to Schedule B filed with the petition and signed by Ms. Ingrim under penalty of perjury as Managing Member of the Debtor, the value of the sign as of the petition date was $7,000.  Ms. Ingrim confirmed that value at the 341 meeting held July 28, 2015. Ellis Decl. Ex. 1 at 6-7, ECF No. 125.  Although the Debtor attempted to amend Schedules

A/B to change the value of the sign to $1 after the Trustee sought to avoid the transfer, these schedules are not signed and will not be considered. See Rule 1008; Searles v. Riley (In re Searles), 317 B.R. 368, 377 (9th Cir. BAP 2004) (schedules must be verified or contain an unsworn declaration under penalty of perjury).

Furthermore, statements in bankruptcy schedules that are executed under penalty of perjury, when offered against a debtor, are eligible as judicial admissions. In re Rolland, 317 B.R. 402, 421 (Bankr. C.D. Cal. 2004).

> "Judicial admissions are formal admissions in the pleadings which have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact." Am Title Inc. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1998) (quoting In re Fordson Eng'g Corp., 25 B.R. 506, 509 (Bankr. E.D. Mich. 1982)). Judicial admissions are conclusively binding on the party who made them. Am. Title Ins., 861 F.2d at 226; Fordson, 25 B.R. at 509. Even when schedules are amended, the old schedules are subject to consideration by the court as evidentiary admissions. Kaskel, 269 B.R. at 715; Bohrer, 266 B.R. at 201.

Rolland, 317 B.R. at 421-22.

Here, the Defendants admit that they are insiders of the Debtor. Answer 1, ECF No. 105. Ms. Ingrim testified that she read the schedules before signing them under penalty of perjury, and the information contained in them was true. Ellis Decl., Ex. 1 at 6, ECF No. 125. Schedule B places a value of $7,000 on the sign, and the Defendants, who are insiders of the Debtor and prepared the schedules, should be bound by the originally represented value under the circumstances of this case. Additionally, despite the Court allowing the Defendants additional time to provide objective evidence of value, the Defendants have not submitted any admissible evidence contrary to the value listed in the schedules. Based on the record before it, and taking all inferences in the Defendants' favor, the Court finds that the value of the sign disposed of by the Defendants postpetition is $7,000.

C. Spoliation

The Trustee also raised spoliation as a means for binding the Defendants to the values placed on the sign and point of sale device in the Debtor's bankruptcy schedules for purposes of § 550. As set forth above, it was not necessary for the Court to rely on spoliation in determining the value of either asset. However, the Trustee also asks this Court to find that spoliation warrants an award of sanctions in this case, including attorney fees.

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2nd Cir. 1999); Apple Inc. v. Samsung Elecs. Co., 888 F. Supp. 2d 976, 989 (N.D. Cal. 2012). In cases filed in federal court, federal law governs the rules that apply to, and the range of sanctions a federal court may impose for, the spoliation of evidence. Adkins v. Wolever, 554 F.3d 650, 652 (6th Cir. 2009).

Federal courts have broad discretion in determining the appropriate sanction for the spoliation of evidence. Adkins, 554 F.3d at 652. Sanctions a court may impose include dismissing a case, granting summary judgment, and instructing a jury that it may make an adverse inference against the spoliating party based on its spoliation of the evidence. Adkins, 554 F.3d at 653. The "determination of an appropriate sanction for spoliation 'is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis.'" Reinsdorf v. Skechers U.S.A., Inc., 296 F.R.D. 604, 626 (C.D. Cal. 2013) (quoting Fujitsu Ltd. v. Fed. Express Corp., 247 F.3d 423, 436 (2d. Cir. 2001)).

It is undisputed that the Defendants disposed of the sign and point of sale device postpetition. The bare fact that evidence has been altered or destroyed, however, "'does not

necessarily mean that the party has engaged in sanction-worthy spoliation.'" Reinsdorf, 296 F.R.D. at 626 (quoting Ashton v. Knight Transp., Inc., 772 F. Supp. 2d 772, 799-800 (N.D. Tex. 2011)). While in the Ninth Circuit a party's destruction of evidence need not be in bad faith to warrant sanctions, "'a party's motive or degree of fault in destroying evidence is relevant to what sanction, if any, is imposed.'" Reinsdorf, 296 F.R.D. at 627 (quoting In re Napster, Inc. Copyright Litigation, 462 F. Supp. 2d 1060, 1066-67 (N.D. Cal. 2006)). In determining whether to impose sanctions for the destruction of evidence, courts apply the following three-part test:

> A party seeking an adverse inference instruction (or other sanctions) based on the spoliation of evidence must establish the following three elements: (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a "culpable state of mind" and (3) that the evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

Reinsdorf, 296 F.R.D. at 626 (quoting Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 220 (S.D.N.Y. 2003)).

The Trustee has not established the necessary culpable state of mind in disposing of estate assets that would warrant the imposition of sanctions in this case. In Mr. Ingrim's Declaration filed in response to the Motion, the Defendant stated that he stored the sign for 36 months, the Trustee did not inquire about the sign until 2018, and he believed the sign became his after expiration of the lease with the Debtor. Resp. Ex. 1, ECF No. 116. Mr. Ingrim stated in his deposition that the point of sales device was similarly held and then eventually thrown away. Ellis Decl. Ex. 4 at 33, ECF No. 112. Although the disposition of these assets postpetition were unauthorized, the Bankruptcy Code allows the Trustee to avoid the transfers under § 549 and obtain a monetary judgment under § 550 for their value. The

evidence does not establish that the Defendants' actions rise to the level of sanctionable conduct warranting an additional judgment against the Defendants for the Plaintiff's attorneys fees. For similar reasons, the Court also disagrees with the Plaintiff that an award of fees is warranted under the Court's inherent authority under § 105.

Accordingly, the Trustee's Motion for Summary Judgment is granted as to the Trustee's claim under § 548 to avoid the transfer of $8,500 made on February 28, 2014. The Trustee's Motion for Summary Judgment is also granted as to the Trustee's claims under § 549 to avoid the transfers/disposition of the point of sale device and the neon sign and to recover the value of the point of sale device in the amount of $5,000 and $7,000 for the sign under § 550. The Trustee's motion for sanctions is denied.

///End of Memorandum Decision///